**JUDGE HELLERSTEIN**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

**JUDITH A. BRANDT,**

                                     Plaintiff,

                - against -

**ALLIED AVIATION SERVICES, INC.,** and
**ROBERT L. ROSE,**

                                     Defendants.
------------------------------------------------------------X

**08 CV 5196**

**COMPLAINT**

JURY TRIAL DEMANDED



JUN 0 6 2008

**U.S.D.C. S.D. N.Y.
CASHIERS**

          Plaintiff JUDITH A. BRANDT, by her attorneys, Sklover & Donath, LLC, complaining of

Defendants ALLIED AVIATION SERVICES, INC. and ROBERT L. ROSE, alleges as follows:


### INTRODUCTORY STATEMENT

1.      Plaintiff Judith A. Brandt (sometimes hereafter referred to as "Plaintiff" or "Judith Brandt")

brings this action against Defendants for (a) breach of implied contract, (b) retaliation for

cooperating with and participating in an EEOC investigation and lawsuit, (c) retaliation for

advocating for, and seeking to vindicate and/or protect the employment and contractual rights of

non-white employees of Defendants pursuant to 42 U.S.C. § 1981; and (d) violation of the

Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Plaintiff

Judith Brandt seeks compensatory damages, interest, costs, disbursements, punitive damages,

treble damages and attorneys' fees.


### I.      JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, because this action

arises under 18 U.S.C. § 1964(c) of the RICO Act, which provides federal jurisdiction for injuries

resulting from RICO violations.

3.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a), in that the RICO claims arise under the laws of the United States and the state-law claims are so related to the RICO claims that they form part of the same case or controversy.

4.    This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1981, in that the claims arise under the laws of the United States and the state-law claims for retaliation are so related to the §1981 claims that they form part of the same case or controversy.

5.    This court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.00.

6.    Venue is proper in this judicial district in that Defendant Allied Aviations Services, Inc. "resides" in the Southern District of New York and Defendant Robert Rose resides in Florida. Both defendants do business within the Southern District of New York and the Southern District of New York is the venue in which the events giving rise to the claim occurred within the meaning of 28 U.S.C. §§ 1391(a)(1), (b)(1) and (c).

## II.    **PARTIES**

7.    Plaintiff Judith Brandt is 65 years of age, a citizen and resident of the State of New Jersey, County of Union, and resides at 65 Bellevue Avenue, Summit, New Jersey 07901.

8.    Defendant Allied Aviation Services, Inc. (hereafter "Defendant Allied Aviation") at all times relevant hereto is, upon information and belief, a corporation existing under the laws of the State of Delaware and presently engaging in business in New York State at 462 Seventh Avenue, New York, NY 10018.

9.    Defendant Allied Aviation, has common ownership with, is centrally managed with, and is commonly operated with its parent, subsidiary and affiliated entities, including without limitation: (a) Tampa Pipeline Corporation; (b) Allied Aviation Holdings Inc.; (c) TM & PL Holdings Corporation, (d) Allied Aviation Holdings Corp.; (e) Allied Aviation New York Services,

2

Inc.; (f) Allied Aviation Fueling of National Airport, Inc.; (g) Allied Aviation Services of Puerto Rico, Inc.; (h) Allied Aviation Service Corporation of Canada; (i) Allied Aviation Fueling of San Antonio, L.P.; (j) Allied Aviation Fueling Company, Inc.; (k) Kansas City Int'l Fueling Facilities Corporation; (l) Ogden Aviation Services (Panama) Corp.; (m) Allied Aviation Fueling of Dallas, L.P.; (n) Newark Automotive Fuel Facilities Corp.; (o) Allied Aviation Service Company of St. Louis, Inc.; (p) LaGuardia Fuel Facilities Corporation; (q) Allied Aviation Service Company of Newfoundland, ULC; and (r) Allied Aviation Fueling of Rhode Island, Inc.

10.    Defendant Robert Rose (hereafter "Defendant Mr. Rose") at all times relevant hereto is and was President of Defendant Allied Aviation and conducted business in the State of New York at 462 Seventh Avenue, New York, New York 10018.

11.    Upon information and belief Defendant Mr. Rose resides in the State of Florida.

12.    At all times relevant hereto, Defendant Mr. Rose had and has an ownership interest in Defendant Allied Aviation.

13.    At all times relevant hereto, Defendant Mr. Rose had the authority to make personnel decisions such as hiring, firing or controlling work conditions of the employees of Defendant Allied Aviation, including Plaintiff Judith Brandt.

### III.    **BACKGROUND FACTS**

14.    Defendant Allied Aviation is engaged in the aviation fueling industry.

15.    Defendant Allied Aviation is one of the largest providers of fueling services, ground services and fuel-shipping services to the commercial aviation industry.

16.    Defendant Allied Aviation handles close to six (6) billion gallons of jet fuel annually.

17.    Defendant Allied Aviation provides (a) into-plane fueling services, (b) fuel facility maintenance, and (c) other services related to the aviation industry.

18.    Defendant Allied Aviation provides services at airports in the United States, Canada and Latin America.

3

19.    Defendant Allied Aviation has approximately 2,500 employees.

20.    Plaintiff Judith Brandt commenced employment with Defendant Allied Aviation in 1995.

21.    At all times during Plaintiff Judith Brandt's 13 years of employment by Defendant Allied Aviation, she worked at its corporate headquarters located in New York, New York 10018.

22.    At all times during Plaintiff Judith Brandt's 13 years of employment by Defendant Allied Aviation, she performed services for Allied Aviation, including each of its wholly-owned, centrally managed and commonly operated parent, subsidiary and affiliated entities, including those listed above.

23.    At all times during Plaintiff Judith Brandt's 13 years of employment by Defendant Allied Aviation she performed her duties in an exemplary manner.

24.    Never in her 13 years of employment by Defendant Allied Aviation was Plaintiff Judith Brandt notified that her job performance was unsatisfactory.

25.    Never in her 13 years of employment by Defendant Allied Aviation was Plaintiff Judith Brandt accused of misconduct.

26.    Plaintiff Judith Brandt's last position with Defendant Allied Aviation was as Vice President, Human Resources and Administration.

27.    Defendant Mr. Rose is President of Defendant Allied Aviation.

28.    Upon information and belief, Defendant Mr. Rose is the sole owner of Defendant Allied Aviation, and its parent, subsidiary and affiliated entities.

29.    In Plaintiff Judith Brandt's position as Vice President, Human Resources and Administration, she reported directly to Defendant Mr. Rose.

30.    In Plaintiff Judith Brandt's position as Vice President, Human Resources and Administration, she was the highest-level Human Resources person at Defendant Allied Aviation.

31.    In Plaintiff Judith Brandt's position as Vice President, Human Resources and Administration, she was responsible for all Human Resources and Labor Relations matters,

4

including those relative to benefits and compensation for Defendant Allied Aviation's approximately 2,500 employees, including all employees of Defendant Allied Aviation's subsidiary companies, with one exception: workers' compensation matters.

32.    Throughout her tenure at Defendant Allied Aviation, Defendant Mr. Rose had the ability to and did make decisions relating to Plaintiff Judith Brandt's employment, compensation and work conditions.

## A.    The Race Discrimination/Retaliation Lawsuit Against Defendant Allied Aviation

33.    In or about 2004, a group of 15 African American and Hispanic individuals employed by Defendant Allied Aviation in a facility in the Dallas/Fort Worth International Airport filed claims of a racially hostile work environment with the U.S. Equal Employment Opportunity Commission ("EEOC").

34.    In 2005 a class action lawsuit alleging widespread race and national origin discrimination, as well as retaliation, was filed against Defendant Allied Aviation in the U.S. District Court for the Northern District of Texas (the "Discrimination/Retaliation Class Action").

35.    The plaintiff in the Discrimination/Retaliation Class Action lawsuit was the EEOC acting on behalf of three Allied Aviation employees and all other similarly situated persons, including one Eric Mitchel, an employee of subsidiary entity Allied Aviation Fueling of Dallas, L.P.

36.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt participated in Defendant Allied Aviation's investigation of the Discrimination/Retaliation Class Action allegations.

37.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt traveled to Texas and personally met with Mr. Eric Mitchel to investigate his complaints of discrimination and retaliation.

38.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt participated in Defendant Allied Aviation's response to the allegations and claims in the Discrimination/Retaliation Class Action.

39.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt cooperated with the EEOC's investigation of the allegations and claims in the Discrimination/Retaliation Class Action.

40.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt participated in the EEOC's investigation of the allegations and claims in the Discrimination/Retaliation Class Action.

41.    As Defendant Allied Aviation's Vice President, Human Resources and Administration, Plaintiff Judith Brandt was a witness in the Discrimination/Retaliation Class Action lawsuit.

42.    Plaintiff Judith Brandt's cooperation with, and participation in, the EEOC investigation of the allegations and claims in the Discrimination/Retaliation Class Action included, but were not limited to:

> a.  Plaintiff Judith Brandt was asked to provide information to the EEOC, which she provided;
>
> b.  Plaintiff Judith Brandt was asked to provide documents to the EEOC, which she provided;
>
> c.  Plaintiff Judith Brandt appeared at a deposition, which deposition was not completed, but instead was halted during its being taken (the "Halted Deposition"); and
>
> d.  Plaintiff Judith Brandt was again scheduled to be deposed, in the Discrimination/Retaliation Class Action in mid-February, 2008 (the "Re-Scheduled Deposition.")

43.    In the Discrimination/Retaliation Class Action lawsuit, Defendant Allied Aviation moved for a dismissal on the grounds that Mr. Eric Mitchel was not an employee of Allied Aviation, but

a separate legal entity, Allied Aviation Fueling of Dallas, L.P, a Texas Limited Partnership (the "Separate Entity Motion to Dismiss").

44.     Upon information and belief, a primary reason Defendant Allied Aviation operates as many different entities under many different names is to defeat efforts to hold its owner(s) accountable for wrongdoing such as discrimination, retaliation and fraud.

45.     The Texas federal court denied the Separate Entity Motion to Dismiss of Defendant Allied Aviation, and permitted the Discrimination/Retaliation Class Action lawsuit to proceed.

46.     Upon information and belief, Defendant Mr. Rose knew that Plaintiff Judith Brandt was cooperating with and participating in the EEOC investigation in each of these ways.

47.     Upon information and belief, Defendant Mr. Rose was aware that Plaintiff Judith Brandt was asked to provide information and documentation to Defendant Allied Aviation's legal counsel which was to be sent to the EEOC.

48.     Defendant Mr. Rose knew that Plaintiff Judith Brandt was scheduled to be deposed at the Re-Scheduled Deposition in mid-February, 2008, after her testimony had been halted at the Halted Deposition.

49.     Defendant Mr. Rose instructed Plaintiff Judith Brandt to lie under oath during her Re-Scheduled Deposition.

50.     Defendant Mr. Rose instructed Plaintiff Judith Brandt to testify, under oath, that she, herself, was not an employee of Defendant Allied Aviation, but instead merely a "consultant" to Defendant Allied Aviation.

51.     What Defendant Mr. Rose instructed Plaintiff Judith Brandt to do was to commit the crime of perjury.

52.     Upon information and belief, Defendant Mr. Rose instructed Plaintiff Judith Brandt to commit perjury for the purpose of avoiding, frustrating and defeating the efforts of the EEOC to hold its owner accountable for illegal discrimination and retaliation, and to commit a fraud upon the EEOC and the federal court.

7

53.    Plaintiff Judith Brandt told Defendant Mr. Rose that she would not lie under oath during her upcoming Re-Scheduled Deposition in the Discrimination/Retaliation Class Action, re-scheduled for mid-February, 2008.

54.    When Plaintiff Judith Brandt told Defendant Mr. Rose that she would not lie under oath at her upcoming Re-Scheduled Deposition in the Discrimination/Retaliation Class Action, Defendant Mr. Rose became enraged, yelled at her, screamed at her, cursed at her and threatened her.

55.    Upon information and belief, Defendant Mr. Rose wanted Plaintiff Judith Brandt to lie under oath to prevent the EEOC from obtaining information that would prove false prior sworn statements of one or more other executives of Defendant Allied Aviation in the Texas Court Separate Entity Motion to Dismiss.

56.    Upon information and belief, Defendant Mr. Rose also directed Clay Mumford, Senior Vice-President – Operations, to lie under oath in the Discrimination/Retaliation Class Action.

57.    Because the Halted Deposition was halted, Plaintiff Judith Brandt was unable at that deposition to testify to the truth under oath.

58.    Plaintiff Judith Brandt told Attorneys Paul Ellis Hash, Esq., and Rachel D. Ziolkowski Esq., of Jackson Lewis LLP, defense counsel to Defendant Allied Aviation in the Discrimination/Retaliation Class Action, that Defendant Mr. Rose had instructed her to lie under oath in her deposition, and that she would not do so, and that she had told Defendant Mr. Rose that she would not do so.

59.    Attorneys Paul Ellis Hash, Esq. and Rachel D. Ziolkowski, Esq. were the attorneys for Defendant Allied Aviation and Plaintiff Judith Brandt, in her capacity as an officer of Defendant Allied Aviation, at the Halted Deposition.

60.    When Plaintiff Judith Brandt told Paul E. Hash, Esq., and Rachel D. Ziolkowski, Esq., of Defendant Mr. Rose's demand that she lie under oath, and Defendant Mr. Rose's anger and

threats in response to her refusal to do so, they told her not to worry about it, and that they would speak with Defendant Mr. Rose about the matter and her concerns.

61.     Upon information and belief, Attorneys Paul Ellis Hash, Esq. and Rachel D. Ziolkowski, Esq. discussed with two attorneys who do legal work for Defendant Allied Aviation, Seth E. Zuckerman, Esq. and Jeffrey W. Lorell, Esq., of the Saiber, LLC law firm of Newark, New Jersey, that Plaintiff Judith Brandt reported to them that Defendant Mr. Rose had directed her to lie under oath, and that she had told them of her refusal to lie under oath at the Re-Scheduled Deposition.

62.     Upon information and belief, Attorneys Paul Ellis Hash, Esq. and Rachel D. Ziolkowski, Esq. discussed with Defendant Mr. Rose Plaintiff Judith Brandt's refusal to lie under oath at the Re-Scheduled Deposition.

63.     Plaintiff Judith Brandt told Clay Mumford, Defendant Allied Aviation's Senior Vice President - Operations, Stan Czaplicki, Defendant Allied Aviation's Vice President of Marketing, and Jayne Cardascia, Defendant Allied Aviation's second-in-command in Human Resources, that Defendant Rose had instructed her to lie under oath in her deposition, and that she would not do so, and that she had told Defendant Rose that she would not do so.

64.     Upon information and belief, attorneys Paul Ellis Hash, Esq. and Rachel D. Ziolkowski, Esq. and/or members of their law firm, reported to Defendant Mr. Rose what Plaintiff Judith Brandt had told them, namely about Defendant Mr. Rose's direction to her to lie under oath at her upcoming Re-Scheduled Deposition, and that she had told him she refused to do so.

65.     Upon information and belief, Clay Mumford, Stan Czaplicki, Jayne Cardascia, and/or other executives of Defendant Allied Aviation reported to Defendant Rose what Plaintiff Judith Brandt had told them, namely about Defendant Rose's direction to her to lie under oath at her upcoming Re-Scheduled Deposition, and that she had told him she refused to do so.

66.     In mid-February, 2008, Plaintiff Judith Brandt told two attorneys who do legal work for Defendant Allied Aviation, Seth E. Zuckerman, Esq. and Jeffrey W. Lorell, Esq., of the Saiber,

LLC law firm of Newark, New Jersey, that Defendant Mr. Rose had directed her to lie under oath, that she would not do so, and that she had told Defendant Mr. Rose that she would not do so.

67.    Upon information and belief, Mr. Zuckerman and Mr. Lorell told Defendant Mr. Rose what Plaintiff Judith Brandt had told them.

68.    Shortly thereafter, on or about February 15, 2008, Plaintiff Judith Brandt's Re-Scheduled Deposition was abruptly cancelled by Defendant Allied Aviation's attorneys.

69.    Shortly thereafter, on February 19, 2008, the Discrimination/Retaliation Class Action was settled.

70.    On March 6, 2008, by telephone call from Defendant Mr. Rose, Plaintiff Judith Brandt was summarily fired, without notice, effective immediately.

71.    In the March 6, 2008 telephone call, Defendant Mr. Rose told Plaintiff Judith Brandt that the reason for her employment termination was that "I have lost faith in you."

72.    On March 11, 2008, the EEOC publicly announced that the Discrimination/Retaliation Class Action lawsuit against Defendant Allied Aviation was settled for the sum of $1.9 million.

73.    Upon information and belief, Defendant Mr. Rose was the person who made the decision to terminate Plaintiff Judith Brandt's employment with Defendant Allied Aviation.

74.    Defendant Mr. Rose fired Plaintiff Judith Brandt in retaliation for her refusal to lie under oath in the Discrimination/Retaliation Class Action and for her participation and cooperation in the investigation of that matter.

75.    Upon information and belief, shortly after his firing of Plaintiff Judith Brandt, Defendant Mr. Rose instructed one or more employees of Defendant Allied Aviation to tell any prospective employers seeking a reference for Plaintiff Judith Brandt that she was fired for "poor performance," to harm her professional reputation, as a further retaliation against her.

**B.     Fraud Relating to Worker's Compensation Claims and Health Insurance Costs**

76.     Defendant Allied Aviation is the largest domestically-owned provider of fueling services to the commercial aviation industry.

77.     Defendant Allied Aviation provides into-plane fueling services, as well as fuel facility maintenance and operations, at 24 major airports in the United States, Canada and Latin America, including, but not limited to, LaGuardia International Airport, John F. Kennedy International Airport, Miami International Airport, Dallas/Fort Worth International Airport, and Ronald Reagan Washington National Airport.

78.     Defendant Allied Aviation has over 2,500 employees.

79.     Defendant Allied Aviation's customers are airlines, airports and public authorities that operate and/or manage airports.

80.     Defendant Allied Aviation provides workers' compensation insurance and benefits for its employees.

81.     By the terms of its contracts with its airline, airport and public authority customers, Defendant Allied Aviation is reimbursed for the actual cost of providing workers' compensation insurance coverage and benefits to its over 2,500 employees.

82.     Plaintiff Judith Brandt was responsible for all matters relative to the benefits of Defendant Allied Aviation's employees, but was always excluded from any matters relative to their workers' compensation benefits.

83.     Defendant Allied Aviation arranges for the acquisition of workers' compensation coverage and payments for workers' compensation benefits through a vendor, namely a Florida insurance brokerage company Hilb, Rogal & Hobbs of Tampa, Florida.

84.     Defendant Allied Aviation arranges for the payment of premiums and claims for workers' compensation coverage and benefits through a vendor, namely insurance brokerage company Hilb, Rogal & Hobbs of Tampa, Florida.

85.    Defendant Allied Aviation arranges for the collection of payments from its customers for workers' compensation coverage, claims and benefits through a vendor, namely insurance brokerage company Hilb, Rogal & Hobbs of Tampa, Florida.

86.    Upon information and belief, the person at insurance brokerage company Hilb, Rogal & Hobbs who has contracted, arranged, and overseen Defendant Allied Aviation's employees' workers' compensation coverage, payment of workers' compensation costs, and collections of payments from customers for five years has been Mr. Michael Kiouses, then a partner in the Hilb, Rogal & Hobbs Florida insurance brokerage firm.

87.    Plaintiff Judith Brandt was denied participation in, or knowledge of, workers' compensation matters at Defendant Allied Aviation by Defendant Mr. Rose and then-Florida insurance agent Mr. Michael Kiouses.

88.    On October 12, 2006, Plaintiff Judith Brandt attended a meeting with Clay Mumford, Senior Vice President – Operations of Defendant Allied Aviation, Jayne Cardascia, Plaintiff Judith Brandt's subordinate, Stan Czaplicki, Defendant Allied Aviation's Vice President of Sales and Marketing, Ms. Ann Carney, Executive Vice President of Hilb, Rogal & Hobbs, and then-Florida insurance agent Mr. Michael Kiouses (the "Workers' Comp Revelation Meeting.")

89.    In the Workers' Comp Revelation Meeting, on October 12, 2006, Plaintiff Judith Brandt learned for the first time that Defendant Allied Aviation reported to its customers false, fraudulent and inflated costs for the workers' compensation coverage and claims of its employees, thereby defrauding its customers of millions of dollars annually (the "Pattern of Fraud.")

90.    In the Workers' Comp Revelation Meeting, on October 12, 2006, Plaintiff Judith Brandt learned for the first time that Defendant Allied Aviation's Pattern of Fraud was directed and overseen by Defendant Mr. Rose and then-Florida insurance broker Mr. Michael Kiouses.

91.    In the Workers' Comp Revelation Meeting, on October 12, 2006, Plaintiff Judith Brandt learned for the first time that Defendant Allied Aviation's Pattern of Fraud had taken place for

some five years, was ongoing, was known to other executives of Defendant Allied Aviation, and was a substantial source of Defendant Allied Aviation's profits.

92.    On the next day, Friday, October 13, 2006, Plaintiff Judith Brandt spoke by telephone with Defendant Mr. Rose, and in that telephone conversation she vehemently objected to the continuation of the Pattern of Fraud.

93.    In the telephone conversation on Friday, October 13, 2006, the day following the Workers' Comp Revelation Meeting, Defendant Mr. Rose screamed at Plaintiff Judith Brandt that he did not care what she thought, and screamed "I don't give a f—k about the employees."

94.    In the telephone conversation on Friday, October 13, 2006, the day following the Workers' Comp Revelation Meeting, Defendant Mr. Rose screamed at Plaintiff Judith Brandt that the Pattern of Fraud was necessary to maintain the financial viability of Defendant Allied Aviation.

95.    Subsequent to the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt refused to take any part in the Pattern of Fraud.

96.    Subsequent to the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt learned that Defendant Mr. Rose was successful in carrying out the Pattern of Fraud by intimidating employees of Defendant Allied Aviation and others who knew about it.

97.    Subsequent to the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt learned that Defendant Mr. Rose was attempting to replicate the Pattern of Fraud regarding workers' compensation matters with a similar pattern of fraud regarding health insurance for employees of Defendant Allied Aviation.

98.    Subsequent to the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt learned that Defendant Mr. Rose was successful in carrying out the extended Pattern of Fraud, now involving health insurance, by again intimidating, coercing and threatening people if they did not collaborate with him in these improper measures.

99.    For example, Defendant Mr. Rose told Ann Carney, Executive Vice President of Florida insurance broker Hilb, Rogal & Hobbs that he would have her fired if she ever used the phrase "self-funded," a reference to the Pattern of Fraud.

100.    At the time, Ms. Carney was engaged in preparation of a summary plan description (commonly referred to as an "SPD") of the CIGNA health insurance program Defendants were introducing into the Pattern of Fraud, which SPD is required to be truthful by the federal Employee Retirement Income Security Act (commonly known as "ERISA").

101.    At the present time, payments to Defendant Allied Aviation by its customer Miami-Dade International Airport have been frozen, because Defendant Allied Aviation has to date refused to provide actual receipts for workers' compensation costs to officials of Miami-Dade International Airport, as is required by contract, instead of falsified vouchers, which have been provided instead.

102.    Upon information and belief, Defendant Allied Aviation refuses to provide the information requested by Miami-Dade International Airport officials because it would likely reveal the Pattern of Fraud taking place there, and at dozens of other airports.

103.    During 2007, Defendant Allied Aviation widened its Pattern of Fraud by extending its use to matters relating to the health care coverage of its employees.

104.    Numerous times since the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt has voiced objection to the Pattern of Fraud to Clay Mumford, Stan Czaplicki, Defendant Mr. Rose and Mr. Michael Kiouses, all to no avail.

105.    Upon information and belief Defendants' Pattern of Fraud has resulted in some four to six million dollars a year of theft by Defendants.

106.    Upon information and belief Defendants' apparent scheme was conceived of, and carried out with the oversight of, Mr. Michael Kiouses, now Vice President, Labor Relations of Defendant Allied Aviation.

14

107.    Upon information and belief, the Defendants' Pattern of Fraud has victimized many airlines, by defrauding them of millions of dollars, including without limitation American Airlines, United Airlines, Continental Airlines, Jet Blue, Northwest Airlines, British Airways, Southwest Airlines, Delta Airlines, US Airways, and others.

108.    Upon information and belief, the Defendants' Pattern of Fraud has victimized many airports and airport managers, by defrauding them of millions of dollars, including without limitation airports and airport managers in: New York City; Miami, Florida; Dallas, Texas; San Diego, California; Atlanta, Georgia; Newark, New Jersey; Washington, DC; Kansas City, Kansas; and Houston, Texas.

109.    Upon information and belief, the Defendants' Pattern of Fraud has victimized many municipal governments, municipal agencies and municipal authorities by defrauding them of millions of dollars, including without limitation municipal governments, municipal agencies and municipal authorities in New York, New York; Miami, Florida; Dallas, Texas; San Diego, California; Atlanta, Georgia; Houston, Texas; and Washington, D.C.

110.    Upon information and belief, the Defendants' Pattern of Fraud has defrauded municipal authorities include the Port Authority of New York and New Jersey, the Miami Airport Authority ("MDADE"), the Dallas/Fort Worth Airport Authority, and the Atlanta Airport Authority.

111.    Upon information and belief, Defendants' Pattern of Fraud has involved the workers' compensation claims of individual members of several labor unions, among them the International Brotherhood of Teamsters, the International Association of Machinists, and the Transportation Workers Union.

112.    Upon information and belief, Defendants' Pattern of Fraud has victimized the federal government, in that it has defrauded the United States Department of Labor, the United States Federal Aviation Administration, and other federal agencies and departments, or has defrauded airports, airport managers and airport authorities of funds provided by these federal agencies and departments.

113.    From and after the Workers' Comp Revelation Meeting, Plaintiff Judith Brandt voiced concerns about and objections to Defendants' Pattern of Fraud.

114.    Specifically, in February 2008, Plaintiff Judith Brandt raised objection to Defendant Mr. Rose about Defendants' Pattern of Fraud.

115.    During January, 2008, Defendant Allied Aviation had to make another ERISA-required filing of an SPD related to its employee health plan with the U.S. Department of Labor.

116.    During January and February, 2008, Plaintiff Judith Brandt raised objection regarding the apparently fraudulent filing to Clay Mumford, Defendant Allied Aviation's Senior Vice President – Operations, Stan Czaplicki, Defendant Allied Aviation's Vice President – Marketing, and Jayne Cardascia, Defendant Allied Aviation's Head of Human Resources because she was "at her wit's end."

117.    On February 11, 2008, Plaintiff Judith Brandt again raised objection to Defendants' Pattern of Fraud to Defendant Allied Aviation's two other senior level executives, Clay Mumford, Senior Vice President – Operations, and Mr. Stan Czaplicki, Vice President, Marketing.

118.    Upon information and belief, Mr. Mumford and Mr. Czaplicki told Defendant Mr. Rose of Plaintiff Judith Brandt's continuing, incessant, increasing objections to Defendants' Pattern of Fraud.

119.    Upon information and belief, Defendant Mr. Rose was concerned that Plaintiff Judith Brandt might expose Defendants' Pattern of Fraud at the Re-Scheduled Deposition in the Discrimination/Retaliation Class Action lawsuit, which rescheduled date was February 21, 2008.

120.    On March 6, 2008, by telephone call from Defendant Mr. Rose, Plaintiff Judith Brandt was summarily fired, without notice, effective immediately.

121.    In the March 6, 2008 telephone call, Defendant Mr. Rose told Plaintiff Brandt that the reason for her employment termination was that "I have lost faith in you."

122.    Upon information and belief Defendant Mr. Rose was the person who made the decision to terminate Plaintiff Judith Brandt's employment with Defendant Allied Aviation.

16

123.    Defendant Mr. Rose fired Plaintiff Judith Brandt in retaliation for her expressing concerns and objections to Defendants' Pattern of Fraud.

124.    Upon information and belief, Defendant Mr. Rose fired Plaintiff Judith Brandt for the purpose of intimidating other employees of Defendant Allied Aviation, as an integral part of the Pattern of Fraud.

125.    Shortly after the firing of Plaintiff Judith Brandt, Mr. Michael Kiouses, the former Florida insurance agent, was hired to replace her, and assigned the title of Defendant Allied Aviation's Vice President of Labor Relations.

126.    Upon information and belief, Mr. Michael Kiouses has no experience in labor relations.

**C.    Defendant Allied Aviation's Express Policy of Anti-Retaliation, and Plaintiff Judith Brandt's Reliance Thereon**

127.    At all times relevant to this action, Defendant Allied Aviation maintained written policies that promised its employees they would be free from retaliation if they reported wrongdoing or participated in an investigation of alleged wrongdoing.

128.    Defendant Allied Aviation's Policy of Business Conduct states:

> **"Retaliation**
>
> Allied Aviation prohibits retaliation against an employee who has filed, in good faith, a complaint under this policy or under any law or for assisting in a complaint investigation. Any supervisor or member of management who knows an employee is being harassed, discriminated or retaliated against and fails to address the situation or fails to notify higher management will be subject to disciplinary action."

129.    The language quoted above also appears within Defendant Allied Aviation's Human Resources Policy Manual (Section 2, page 7).

130.    Defendant Allied Aviation's Salaried Employee Handbook also has an anti-retaliation provision, which provides:

**"Retaliation**

Allied Aviation prohibits retaliation against an employee who has filed, in good faith, a complaint under this policy or under any law or for assisting in a complaint investigation." (Page 9)

131.   At all times relevant to the Discrimination/Retaliation Class Action, Plaintiff Judith Brandt was aware of Defendant Allied Aviation's anti-retaliation policies (hereafter, "Defendant Allied Aviation's Anti-Retaliation Policies.")

132.   At all times relevant to the Pattern of Fraud, Plaintiff Judith Brandt was aware of Defendant Allied Aviation's Anti-Retaliation Policies.

133.   In her participation in and cooperation with the EEOC and Defendant Allied Aviation's own internal investigations relative to the Discrimination/Retaliation Class Action lawsuit, Plaintiff Judith Brandt relied on the assurances set forth in Defendant Allied Aviation's Anti-Retaliation Policies.

134.   In her raising concerns and objection to Defendants' Pattern of Fraud, and in refusing to participate in it, Plaintiff Judith Brandt relied on the assurances set forth in Defendant Allied Aviation's Anti-Retaliation Policies.

135.   When Defendants fired Plaintiff Judith Brandt in retaliation for her refusal to lie under oath in the Discrimination/Retaliation Class Action and for her participation in the investigation of that matter, they violated the express assurances set forth in Defendant Allied Aviation's Anti-Retaliation Policies upon which Plaintiff Judith Brandt had relied.

136.   When Defendants fired Plaintiff Judith Brandt in retaliation for her expressing concerns and objections to Defendants' Pattern of Fraud, they violated the express assurances set forth in Defendant Allied Aviation's Anti-Retaliation Policies upon which Plaintiff Judith Brandt had relied.

137.   As a result of Defendants' violation of their assurances to her, and her termination, Plaintiff Judith Brandt has and continues to suffer financially and emotionally.

138.    Since her termination by Defendants, and as a direct and proximate result of it, Plaintiff Judith Brandt suffers from sleeplessness, weight loss of over 25 pounds, headaches, digestive disorders and depression.

139.    Since her termination by Defendants, and as a direct and proximate result of it, Plaintiff Judith Brandt's husband says that she is "not the same person" she used to be.

140.    Since her termination by Defendants, and as a direct and proximate result of it, Plaintiff Judith Brandt has been seeking, but unable, to replace her employment.

141.    Since her termination by Defendants, and as a direct and proximate result of it, Plaintiff Judith Brandt has had difficulty obtaining an interview for new employment.

142.    To date, Plaintiff Judith Brandt remains unemployed.

143.    To date, Plaintiff Judith Brandt remains concerned and unsure if at age 65 she will ever again be able to find comparable employment.

144.    Upon information and belief, subsequent to his firing of Plaintiff Judith Brandt, Defendant Mr. Rose instructed one or more employees of Defendant Allied Aviation to tell any prospective employers seeking a reference for Plaintiff Judith Brandt that she was fired for "poor performance," to harm her professional reputation, as a further retaliation against her.

## IV.    FIRST CLAIM FOR RELIEF
### (Breach of Implied Contract against Defendant Allied Aviation)

145.    Plaintiff Judith Brandt repeats and realleges each and every allegation contained in paragraphs 1 through 144, above, with the same force and effect as if fully set forth herein.

146.    Defendant Allied Aviation initiated, maintained, and espoused express, written company policies that protected employees from retaliation if they resisted or reported company wrongdoing, financial irregularity, fraud, illegality, and/or impropriety. ("Defendant Allied Aviation's Anti-Retaliation Policies.")

147.    Defendant Allied Aviation made Plaintiff Judith Brandt aware of its Anti-Retaliation Policies.

148.    Defendant Allied Aviation's Anti-Retaliation Policies limited Defendant Allied Aviation's "at-will" right to discharge its employees.

149.    Plaintiff Judith Brandt relied upon Defendant Allied Aviation's Anti-Retaliation Policies when she participated in and cooperated with the EEOC, counsel for Defendant Allied Aviation and counsel for Defendant Allied Aviation's employees in the EEOC investigation of race allegations by Defendant Allied Aviation's employees.

150.    Plaintiff Judith Brandt relied upon Defendant Allied Aviation's Anti-Retaliation Policies when she reported her concerns that Defendant Allied Aviation was apparently overbilling the airlines for workers compensation and health insurance costs to Defendant Rose, Clay Mumford and Stan Czaplicki.

151.    Plaintiff Judith Brandt relied upon Defendant Allied Aviation's Anti-Retaliation Policies when she reported her concerns that Defendant Allied Aviation was apparently overbilling its airline, airport manager, and airport authority customers for worker's compensation costs to Defendant Rose, Clay Mumford and Stan Czaplicki.

152.    Defendant Allied Aviation violated its own Defendant Allied Aviation's Anti-Retaliation Policies when it retaliated against Plaintiff Judith Brandt for her cooperation with and participation in the investigation of illegal discrimination and retaliation in the Discrimination/Retaliation Class Action.

153.    Defendant Allied Aviation violated its own Defendant Allied Aviation's Anti-Retaliation Policies when it retaliated against Plaintiff Judith Brandt for her refusal to testify falsely, and her reporting to legal counsel and her executive colleagues the demand of Defendant Mr. Rose that she lie in her testimony under oath.

154.    Defendant Allied Aviation violated its own Defendant Allied Aviation's Anti-Retaliation Policies when it retaliated against Plaintiff Judith Brandt for her raising concerns about, objecting to, and reporting of Defendant's Pattern of Fraud.

155.    Plaintiff Judith Brandt relied upon Defendant Allied Aviation's Anti-Retaliation Policies to the detriment of her career, to the detriment of her financial well-being, to the detriment of her professional reputation, and to the detriment of her employment.

156.    As a result of her detrimental reliance upon Defendant Allied Aviation's Anti-Retaliation Policy, Plaintiff Judith Brandt's employment with Defendant Allied Aviation was terminated.

157.    By reason of the foregoing, Plaintiff Judith Brandt is entitled to recover from Defendant Allied Aviation her damages in the sum of at least five million dollars ($5,000,000.00), together with costs and interest.

## V.    SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of the New York Executive Law § 296, Commonly Known as The NYS Human Rights Law, against Both Defendants)

158.    Plaintiff Judith Brandt repeats and realleges each and every allegation contained in paragraphs 1 through 157, above, with the same force and effect as if fully set forth herein.

159.    By virtue of the fact that Plaintiff Judith Brandt worked with and for Defendants in New York State, New York State Executive Law § 296 applies to her and to Defendants.

160.    New York State Executive Law Section 296, also known as the New York Human Rights Law, provides as follows:

> [i]t shall be an unlawful discriminatory practice ... [f]or any employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [the Human Rights Law] or because he has filed a complaint, testified or assisted in any proceeding under [the Human Rights Law].

161.    Defendant Allied Aviation is an "employer" within the meaning of that term under the NYS Human Rights Law.

162.    Plaintiff Judith Brandt participated in "protected activity" under the New York State Human Rights law when she participated in the EEOC investigation of the Discrimination/Retaliation Class Action.

21

163.    Defendants were aware of the participation of Plaintiff Judith Brandt in the EEOC investigation of the Discrimination/Retaliation Class Action.

164.    Defendants had knowledge that Plaintiff Judith Brandt was scheduled to be deposed in conjunction with the EEOC race discrimination investigation and the Discrimination/Retaliation Class Action.

165.    Defendant Mr. Rose was aware of Plaintiff Judith Brandt's participation in the EEOC race discrimination investigation and the Discrimination/Retaliation Class Action, as Defendant Mr. Rose and Plaintiff Judith Brandt had numerous discussions regarding same.

166.    On March 6, 2008 Plaintiff Judith Brandt suffered an "adverse action" within the meaning of that term under the NYS Human Rights Law when her employment with Defendant Allied Aviation was terminated.

167.    The adverse action suffered by Plaintiff Judith Brandt was in retaliation for her engaging in protected activity.

168.    Plaintiff Judith Brandt was terminated for participating in the EEOC investigation and the Discrimination/Retaliation Class Action in violation of the New York State Human Rights law.

169.    A causal connection exists between the protected activity engaged in by Plaintiff Judith Brandt and the adverse action she suffered.

170.    Defendant Mr. Rose is subject to individual liability under the New York Human Rights Law for his retaliatory actions, as he is an owner of Defendant Allied Aviation, and had the ability to and did make adverse personnel decisions relating to Plaintiff Judith Brandt's employment.

171.    Defendant Mr. Rose was aware of Plaintiff Judith Brandt's participation in the EEOC investigation and the Discrimination/Retaliation Class Action and was the person to inform Plaintiff Judith Brandt of her termination.

172.    Upon information and belief, Defendant Mr. Rose was the person who decided to terminate Plaintiff Judith Brandt's employment.

22

173.    By reason of the foregoing, Plaintiff Judith Brandt is entitled to recover from Defendants her damages in the sum of at least five million dollars ($5,000,000.00), together with costs and interest.

## VI.    THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of the New York City Administrative Code § 8-107, Commonly knows as the NYC Human Rights Law, against Both Defendants)

174.    Plaintiff Judith Brandt repeats and realleges each and every allegation contained in paragraphs 1 through 173, above, with the same force and effect as if fully set forth herein.

175.    By virtue of the fact that Plaintiff Judith Brandt worked with and for Defendants in New York City, New York, New York City Administrative Code § 8-107 applies to her and to Defendants.

176.    New York City Administrative Code § 8-107, also known as the New York City Human Rights Law, provides as follows:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which [the New York City Human Rights Law] applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under [the New York City Human Rights Law], (ii) filed a complaint, testified or assisted in any proceeding under [the New York City Human Rights Law], ...

177.    Defendant Allied Aviation is an "employer" within the meaning of that term under the NYC Human Rights Law.

178.    Plaintiff Judith Brandt participated in protected activity as defined by Section 8-107 of the New York City Administrative Code, commonly known as the NYC Human Rights Law, when she participated in the EEOC investigation of the race allegations raised by Defendant Allied Aviation's employees and when she participated in the Discrimination/Retaliation Class Action.

179.    Defendants were aware of Plaintiff Judith Brandt's participation in the EEOC investigation and the Discrimination/Retaliation Class Action.

23

180.    Defendants had knowledge that Plaintiff Judith Brandt was scheduled to be deposed in conjunction with the EEOC race discrimination investigation and the Discrimination/Retaliation Class Action.

181.    Defendant Mr. Rose was aware of Plaintiff Judith Brandt's participation in the EEOC race discrimination investigation and the Discrimination/Retaliation Class Action, as Defendant Mr. Rose and Plaintiff Judith Brandt had numerous discussions regarding same.

182.    The adverse action suffered by Plaintiff Judith Brandt was in retaliation for her engaging in protected activity.

183.    Plaintiff Judith Brandt was terminated for participating in the EEOC investigation and the Discrimination/Retaliation Class Action in violation of the New York City Human Rights law.

184.    A causal connection exists between the protected activity engaged in by Plaintiff Judith Brandt and the adverse action she suffered.

185.    On March 6, 2008 Plaintiff Judith Brandt suffered an adverse action when her employment by Defendant Allied Aviation was terminated.

186.    The adverse action was in retaliation for her engaging in protected activity; Plaintiff Judith Brandt was terminated for participating in the EEOC investigation and the Discrimination/Retaliation Class Action in violation of the New York City Human Rights Law.

187.    Defendant Mr. Rose is subject to individual liability under the New York City Human Rights for his retaliatory actions, as he is an owner of Defendant Allied Aviation, and had the ability to and did make an adverse personnel decisions relating to Plaintiff Judith Brandt's employment.

188.    Defendant Mr. Rose was aware of Plaintiff Judith Brandt's participation in the EEOC investigation and the Discrimination/Retaliation Class Action and was the person to inform Plaintiff Judith Brandt of her termination.

189.    Upon information and belief, Defendant Mr. Rose was the person who decided to terminate Plaintiff Judith Brandt's employment.

190.    By reason of the foregoing, Plaintiff Judith Brandt is entitled to recover from Defendants her damages in the sum of at least five million dollars ($5,000,000.00), together with costs and interest, as well as attorneys fees and punitive damages in the sum of ten million dollars ($10,000,000.00).

## VII.    FOURTH CLAIM FOR RELIEF
### (Civil RICO – Violation of 18 U.S.C. § 1962, against Both Defendants)

191.    Plaintiff Judith Brandt repeats and realleges each and every allegation contained in paragraphs 1 through 190, above, with the same force and effect as if fully set forth herein.

192.    By virtue of the fact that Defendants engage in interstate and foreign commerce, and in business activity which affects interstate and foreign commerce, within the United States, they are subject to 18 USC § 1962, commonly known as the Racketeer Influenced and Corrupt Organizations Act, or the "RICO" statute.

193.    Defendants' Pattern of Fraud and their other conduct in overbilling airline customers at 24 locations throughout the United States, Canada and Latin America relative to workers' compensation costs, and their use of the U.S. mail and wire communication systems in doing so, constitute prohibited "racketeering" activity as defined in the RICO statute.

194.    Defendants' conduct of intimidating, threatening, coercing and otherwise forcing their employees to participate in their Pattern of Fraud and in other fraudulent conduct, and using the U.S. mail and wire communications systems to do so, constitutes "racketeering" activity as defined in the RICO statute.

195.    Defendants' conduct in attempting to intimidate, threaten, coerce and otherwise force Plaintiff Judith Brandt to lie under oath in a deposition, and using the U.S. mail and wire communications systems to do so, constitutes "racketeering" activity as defined in the RICO statute.

196.    Defendants' concealing their Pattern of Fraud regarding workers' compensation matters from Plaintiff Judith Brandt, Defendant Allied Aviation's Vice President, Human Resources and Administration, and the officer presumptively responsible for such matters, was a fraud upon her, and using the U.S. mail and wire communications systems to do so, constitutes "racketeering" activity as defined in the RICO statute.

197.    Defendants' firing of Plaintiff Judith Brandt was an act of intimidation of other employees of Defendants, and using the U.S. mails and wire communications systems to do so, constitutes "racketeering" activity as defined in the RICO statute.

198.    Defendants' directing one or more employees of Defendant Allied Aviation to lie by telling prospective employers that Plaintiff Judith Brandt was fired for poor performance, and using the U.S. mails and wire communications systems to do so, constitutes "racketeering" activity as defined in the RICO statute.

199.    Defendants' preparation of false health insurance reimbursement statements was intended to commit a fraud on each of their airline customers and others, and their use of the U.S. mail and wire communications systems to do so, constitute a "pattern of racketeering" activity as defined in the RICO statute.

200.    Defendants' preparation of false worker's compensation reimbursement statements was intended to commit a fraud on each of their airline customers and others, and their use of the U.S. mail and wire communications systems to do so, constitute a "pattern of racketeering" activity as defined in the RICO statute.

201.    Defendants multiple, repeated, and coordinated racketeering activities constitute a "pattern of racketeering activity" as defined in the RICO statute.

202.    Defendants, Defendant Allied Aviation's executives and representatives, Mr. Michael Kiouses, and Hilb, Rogal & Hobbs have all conspired to commit these acts of racketeering in violation of 18 U.S.C. § 1962(d).

26

203.    The use of insurance brokerage company Hilb, Rogal & Hobbs by Defendant Mr. Rose, Defendant Allied Aviation and Mr. Michael Kiouses to carry out their "racketeering" activity is such that Hilb, Rogal & Hobbs is a racketeering "enterprise" as defined by the RICO statute.

204.    The acts and efforts of Defendants, Defendant Allied Aviation's executives and representatives, Hilb, Rogal and Hobbs, and Mr. Michael Kiouses have been coordinated, with a common purpose, to wit, to defraud multiple persons of millions of dollars, an ongoing organizational structure, and an enterprise distinct from the pattern of racketeering itself.

205.    Upon information and belief, the fraudulent scheme of overbilling each of the airline customers started approximately 6 years ago, continues on a monthly basis, and continues to date.

206.    The underlying acts of Defendants in carrying out their Pattern of Fraud and other racketeering activities occurred within ten (10) years of each other, and are so interrelated as to form a "pattern of racketeering activity" as defined in the RICO statute.

207.    Plaintiff Judith Brandt was injured by the racketeering acts of (a) Defendants' concealing from her their Pattern of Fraud, (b) Defendants' intimidating her to prevent her from testifying honestly about their Pattern of Fraud, (c) Defendants' firing her to intimidate their other employees from objecting to the Pattern of Fraud, and testifying truthfully, each in itself an independent act of fraud and racketeering, and (d) Defendants' directing their employees to tell any of Plaintiff Judith Brandt's prospective employers that she was terminated from her job for performance issues, each an independent overt act of fraud, and each an independent overt act of racketeering under the RICO statute.

208.    The distinct, overt acts of Defendants' racketeering activities have (a) damaged Plaintiff's physical health, (b) led directly to Plaintiff's loss of income, and (c) damaged Plaintiff's professional reputation, (d) resulted directly in Defendants' senior executives interfering with her efforts to find new gainful employment, all to Plaintiff's substantial damage, harm and detriment.

27

209.    Plaintiff and her reputation and other valuable financial interests were injured by the overt, multiple, repeated racketeering acts of Defendants, as well as Defendants' conspiracy to commit those overt racketeering acts.

210.    By reason of the foregoing violations of the RICO statute by Defendants, Plaintiff Judith Brandt is entitled to recover from Defendants the sum of no less than ten million dollars ($10,000,000.00), together with costs and interest.

211.    By reason of the foregoing violations of the RICO statute by Defendants, Plaintiff Judith Brandt is entitled to recover from Defendants treble the sum of damages actually incurred or to be incurred as a result.

## VII.    FIFTH CLAIM FOR RELIEF
### (42 U.S.C. § 1981 against Defendant Allied Aviation)

212.    Plaintiff Judith Brandt repeats and realleges each and every allegation contained in paragraphs 1 through 211, above, with the same force and effect as if fully set forth herein.

213.    Plaintiff Judith Brandt engaged in conduct sought to advocate for, vindicate and/or protect the rights of persons of a racial minority.

214.    Plaintiff Judith Brandt sought to advocate for, vindicate or protect the employment and contractual rights of non-white persons who were employees of Defendant Allied Aviation.

214.    The employees of Defendant Allied Aviation that Plaintiff Judith Brandt sought to advocate for, vindicate or protect were all among a racial minority.

215.    Upon information belief, Defendant Allied Aviation failed to offer non-white employees employed through its Dallas, Texas subsidiary the same terms and conditions of employment as it provided to similarly situated white employees.

216.    The employees of Defendant Allied Aviation that Plaintiff Judith Brandt sought to advocate for, vindicate or protect were racial minority employees who were enduring discrimination in the terms and conditions of their employment.

28

217.   Plaintiff Judith Brandt engaged in conduct to advocate for, vindicate and protect the rights of non-white employees of Defendant Allied Aviation when she (a) opposed Defendants' practice of offering non-white employees different terms or employment, (b) participated in and cooperated with the EEOC investigation of Defendants' discriminatory conduct, and (c0 refused to cover up and continue Defendants' discriminatory practices by refusing to testify in a false manner.

218.   Defendants were aware of Plaintiff Judith Brandt's conduct in that she cooperated with and participated in the EEOC investigation and Discrimination/Retaliation Class Action lawsuit.

219.   Defendants were aware of the race of the employees seeking legal protections from the EEOC and in the Discrimination/Retaliation Class Action lawsuit.

220.   Defendants retaliated against Plaintiff Judith Brandt for her conduct in advocating for, and seeking to vindicate and/or protect the non-white employees of Defendant Allied Aviation who sought assistance from the EEOC and the United States District Court.

221.   As a result of and in retaliation for her actions in seeking to advocate for, vindicate or protect the contractual rights of racial minority employees of Defendant Allied Aviation, Defendants terminated her contract of employment with Defendant Allied Aviation.

222.   As a result of and in retaliation for her actions in seeking to advocate for, vindicate or protect the contractual rights of racial minority employees of Defendant Allied Aviation, Defendants terminated Plaintiff Judith Brandt's enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

221.   By reason of the foregoing violation, Plaintiff Judith Brandt is entitled to recover from Defendants the sum of no less than five million dollars ($5,000,000.00), together with costs and interest, as well as attorneys fees and punitive damages in the sum of ten million dollars ($10,000,000.00).

**WHEREFORE,**

(a)    On the **First Claim for Relief,** Plaintiff Judith Brandt demands judgment in the amount of no less than five million dollars ($5,000,000.00), together with costs and interest thereon;

(b)    On the **Second Claim for Relief,** Plaintiff Judith Brandt demands judgment in the amount of no less than five million dollars ($5,000,000.00), together with costs and interest thereon;

(c)    On the **Third Claim for Relief,** Plaintiff Judith Brandt demands judgment in the amount of no less than five million dollars ($5,000,000.00) together with costs and interest thereon, as well as attorneys' fees;

(d)    On the **Third Claim for Relief,** Plaintiff Judith Brandt demands punitive damages against Defendants, based on their willful, wanton, deceitful, shameful and unconscionable acts; to punish Defendants for misconduct that blatantly disregarded the law and the rights of Plaintiff Judith Brandt, and to deter Defendants from engaging again in such conduct in the future, in the amount of no less than ten million dollars ($10,000,000.00).

(d)    On the **Fourth Claim for Relief,** Plaintiff Judith Brandt demands judgment in an amount of no less than ten million dollars ($10,000,000.00) together with costs and interest thereon, and attorneys' fees; and

(e)    On the **Fourth Claim for Relief,** Plaintiff Judith Brandt demands treble damages, in the sum of thirty million dollars ($30,000,000.00).

(f)    On the **Fifth Claim for Relief,** Plaintiff Judith Brandt demands judgment in an amount of no less than five million dollars ($5,000,000.00) together with costs and interest thereon, and attorneys' fees; and

(g)    On the **Fifth Claim for Relief,** Plaintiff Judith Brandt demands punitive damages against Defendants, based on their willful, wanton, deceitful, shameful and unconscionable acts; to punish Defendants for misconduct that blatantly disregarded the law and the rights of Plaintiff

Judith Brandt, and to deter Defendants from engaging again in such conduct in the future, in the amount of no less than ten million dollars ($10,000,000.00).

On the **First, Second, Third, Fourth and Fifth Claims for Relief**, Plaintiff Judith Brandt also respectfully requests judgment for such other, further and different relief as may be deemed just and proper by the Court.

Dated:        New York, New York
              June 5, 2008

                              Respectfully submitted,

                              SKLOVER & DONATH, LLC

                              By:_____
                                  ALAN SKLOVER (AS-3737), A Member
                                  *Attorneys for Plaintiff Judith Brandt*
                                  Ten Rockefeller Plaza, Suite 816
                                  New York, New York 10020
                                  (212) 757-5000