UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUDITH A. BRANDT,

    Plaintiff,

v.

ALLIED AVIATION SERVICES, INC. and
ROBERT L. ROSE,

    Defendants.

Civil Action No. 08-cv-5196 (AKH)(DF)
ECF Case

*Document Filed Electronically*

---

# BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE UNAUTHORIZED DISCLOSURES OF PRIVILEGED COMMUNICATIONS

---

SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey  07102
(973) 622-3333
Attorneys for Defendants

On the Brief:

Sean R. Kelly

{00534840.DOC}

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 4

THE COURT SHOULD STRIKE FROM THE COMPLAINT
ALL IMPROPER DISCLOSURES OF ALLIED'S ATTORNEY-
CLIENT PRIVILEGED COMMUNICATIONS ........................................................ 4

A.  The Complaint Discloses Privileged Attorney-Client Communications ................ 4

B.  Plaintiff Has No Authority to Waive Allied's Privilege to Its
    Attorney-Client Communications ........................................................................ 6

C.  The Crime-Fraud Exception to the Attorney-Client Privilege
    Is Inapplicable ..................................................................................................... 7

    1.  Plaintiff Cannot Carry Her Burden of showing "Probable Cause" to
        Believe that a Crime or Fraud Was Committed ............................................. 8

    2.  Plaintiff Cannot Carry Her Burden of Showing that the Privileged
        Attorney-Client Communications Were Made "In Furtherance" of
        the Alleged Fraud ........................................................................................ 10

D.  The Appropriate Remedy for Plaintiff's Unauthorized Disclosures of
    Alleged Communications Is for the Court to Strike those Paragraphs
    From the Complaint ............................................................................................ 11

CONCLUSION .......................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page

Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Alcoa S.S. Co., 232
F.R.D. 191 (S.D.N.Y. 2005) .................................................................................. 5, 6

Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437
(S.D.N.Y. 1995) ........................................................................................................ 5

Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F.Supp.2d 367 (S.D. N.Y
2006). ..................................................................................................................... 12

Commodity Future Trading Commision v. Weintraub., 471 U.S. 343, 105
S. Ct. 1986, 85 L. Ed. 2d 372 (1985) .................................................................. 5, 6

In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32 (2d Cir. 1986) ........................ 10

In re John Doe, Inc., 13 F.3d 633 (2d. Cir. 1994) ....................................................... 7, 8

Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487 (1941) ...................................... 4

Metrokane, Inc. v. Wine Enthusiast, 160 F.Supp.2d 633 (S.D.N.Y. 2001) ................ 11, 12

In re Omnicom Group Inc. Sec. Litigation, 233 F.R.D. 400 (S.D.N.Y.
2006) ........................................................................................................................ 9

Ross v. UKI LTD., 2004 WL 67221 (S.D.N.Y. 2004) ....................................................... 8

Strougo v. Bea Associates, 199 F.R.D. 515 (S.D.N.Y. 2001) ........................................... 5

United States v. Doe (In re Six Grand Jury Witnesses), 979 F.2d 939 (2d
Cir. 1992) ................................................................................................................. 5

United States v. Gasparik, 141 F.Supp.2d 361 (S.D.N.Y 2001) ................................. 8, 10

United States v. International Brotherhood of Teamsters, 119 F.3d 210 (2d
Cir. 1997) ................................................................................................................. 5

United States v. Rivera, 837 F.Supp. 565 (S.D.N.Y. 1993) .............................................. 8

United States v. White, 887 F. 2d 267 (D.C. Cir. 1989) ................................................. 10

Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584
(1981) ....................................................................................................................... 5

U.S. v. Jacobs, 117 F.3d 82 (2d Cir. 1997) .............................................................. 7, 8, 10

## STATE CASES

In re Marketing Investors Corp., 80 S.W. 3d 44 (Tex. App. 1998) .................................... 4

Nowlin v. People (In re Grand Jury Subpoena), 767 N.Y.S.2d 77 (N.Y.
     App. Div. 1st Dep't 2003) ............................................................................................ 7

Robert V. Straus Prod. v. Pollard, 734 N.Y.S.2d 170 (N.Y. App. Div. 1st
     Dep't 2001) .................................................................................................................. 7

Rossi v. Blue Cross & Blue Shield, 540 N.E.2d 703 (1989) ............................................... 6

Talvy v. American Red Cross, 618 N.Y.S.2d 25 (N. Y. App. Div. 1st
     Dep't 1994), aff'd, 87 N.Y.2d 826 (1995) .................................................................... 7

Tekni-Plex, Inc. v. Meyner & Landis, 674 N.E.2d 663 (1996) ........................................... 7

## FEDERAL STATUTES

Fed. R. Civ. P 12(f) ................................................................................................... 1, 4, 11

Fed. R. Evid. 501 ................................................................................................................ 4

## PRELIMINARY STATEMENT

This is a wrongful termination action in which Plaintiff, Judith A. Brandt, asserts a variety of common law and statutory claims against her former employer, defendant Allied Aviation Services, Inc. ("Allied"), and Allied's president, defendant Robert L. Rose. Defendants now move pursuant to Fed. R. Civ. P 12(f)(2) to strike from the Complaint Plaintiff's improper disclosures of Defendants' alleged communications which, if they occurred, would be subject to the attorney-client privilege. The privilege attaching to those communications belongs to Allied. Plaintiff, as a former employee, has no right or authority to waive that privilege. Plaintiff's unauthorized disclosures of privileged communications should therefore be stricken.

## STATEMENT OF FACTS

For the purposes of this motion to strike, we assume the truth of the allegations of Plaintiff's Complaint, which are as follows:

Plaintiff worked as Vice President, Human Resources and Administration at the Manhattan corporate offices of Allied, a company that provides aviation fueling services for airlines at various airports around the world. (Complaint, at ¶¶ 15, 20, 26, 70). In that capacity, Plaintiff was responsible for all human resources and labor relations matters except workers compensation. (Complaint, at ¶ 31). She reported directly to the president, defendant Rose. (Complaint, at ¶¶ 27, 29).

In 2004, a group of minority employees working at the Allied facility in the Dallas-Fort Worth International Airport filed claims with the United States Equal Employment Opportunity Commission alleging a racially hostile work environment. (Complaint, at ¶ 33). In 2005, the EEOC filed a lawsuit against Allied in the United States District Court for the Northern District of Texas ("the Texas litigation"), asserting claims of discrimination and retaliation on behalf of several employees at Allied's Dallas-based subsidiary. (Complaint, at ¶¶ 34, 35).

As Vice President of Human Resources and Administration, Plaintiff participated in Allied's internal investigation of the facts at issue in the Texas litigation (Complaint, at ¶¶ 36-38) and in responding to the EEOC's discovery demands. (Complaint, at ¶¶ 39, 40). Her participation included providing information and documents, and appearing for the first day of her deposition in January 2008. (Complaint, at ¶ 42). The parties adjourned after the first day of her deposition with the expectation of resuming and completing it in mid-February 2008. (Complaint, at ¶ 42).

Plaintiff alleges that Rose asked her to lie under oath at the second day of her deposition. (Complaint, at ¶¶ 46-52). Specifically, Plaintiff alleges that Rose asked her to testify in her deposition that she was not an employee of Allied, but rather an independent contractor. (Complaint, at ¶¶ 43, 55). Plaintiff states in her Complaint that she refused to give such false testimony. (Complaint, at ¶ 54).

On February 19, 2008, without Plaintiff's deposition ever having resumed, the Texas litigation was settled. (Complaint, at ¶ 68, 69). Plaintiff's employment with Allied was terminated on March 6, 2008. (Complaint, at ¶ 70). Plaintiff alleges that she was fired "in retaliation for her refusal to lie under oath" in the Texas litigation. (Complaint, at ¶ 74).

In this litigation, Plaintiff asserts claims of breach of the anti-retaliation policy published in Allied's Employee Handbook (Complaint ¶¶ 146-54); violation of the New York State and City Human Rights Laws (Complaint ¶¶ 159-72, 175-89); and violation of 42 U.S.C. §1981, in that defendants allegedly terminated Plaintiff's employment in retaliation for her "refusing to testify in a false manner" (Complaint ¶¶ 213-22).[1]

Defendants now move to strike from the Complaint Plaintiff's improper disclosure of Allied's alleged communications with its counsel which, if such attorney-client communications occurred, would be privileged. As required by Fed. R. Civ. P. 12 (f), we make this motion "before responding to the pleading"; we anticipate filing an Answer to the Complaint within 10 days after notice of the Court's disposition of this motion. Fed. R. Civ. P. 12 (a)(4).

---

[1] Plaintiff recently submitted to the Court a proposed Stipulation and Order dismissing the Fourth Claim, which had asserted RICO violations.

## ARGUMENT

### THE COURT SHOULD STRIKE FROM THE COMPLAINT ALL IMPROPER DISCLOSURES OF ALLIED'S ATTORNEY-CLIENT PRIVILEGED COMMUNICATIONS

The Complaint includes several allegations regarding the substance of communications between Allied officers and the corporation's attorneys in connection with the Texas litigation. (Complaint ¶¶ 58, 60-62, 64, 66-67). The attorney-client privilege pertaining to those alleged communications, assuming they occurred, belongs solely to Allied, and not to its disaffected former employee. Only Allied, and not Plaintiff, has the authority to waive the privilege. Moreover, the privilege is not overcome in this case by the "crime-fraud exception". The Court should therefore exercise its power under Fed. R. Civ. P. 12(f) to strike from the Complaint all such inappropriate disclosures of privileged attorney-client communications.

**A.   The Complaint Discloses Privileged Attorney-Client Communications**

Pursuant to Federal Rule of Evidence 501, privilege is governed by federal common law, except that the forum state's privilege rules apply "with respect to an element of a claim or defense to which State law supplies the rule of decision." Here, Plaintiff asserts the same facts in support of her federal and state claims. However, the choice here between federal and state law is without significance, because under either body of law, the disclosures at issue are privileged.[2]

---

[2] To the extent "State law supplies the rule of decision" as to certain issues in the case and subject matter jurisdiction is premised in part on diversity of citizenship, this Court could apply New York choice-of-law principles to conclude that Texas substantive law controls the applicability of the privilege with respect to those issues, because at least some of the communications are alleged to have taken place in Texas in connection with a Texas litigation. See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941). Again, the choice of law issue is irrelevant, because the result would be the same. See In re Marketing Investors Corp., 80 S.W.3d 44 (Tex. App. 1998) (expressly adopting federal common law privilege rule in concluding that when a corporate officer is dismissed from his or her employment, the

{00534840.DOC}                                4

Under federal common law, the attorney-client privilege shields communications "among clients and counsel made for the purpose of obtaining legal advice, provided that the communications were intended to be kept confidential and the privilege has not been waived." See Am. S.S. Owners Mut. Prot. & Indemn. Ass'n v. Alcoa S.S. Co., 232 F.R.D. 191, 196 (S.D.N.Y. 2005), (citing United States v. International Brotherhood of Teamsters, 119 F.3d 210 (2d Cir. 1997); United States v. Doe (In re Six Grand Jury Witnesses), 979 F.2d 939, 943 (2d Cir. 1992); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441 (S.D.N.Y. 1995)).

In seeking and obtaining legal advice, a corporation necessarily communicates through its agents and employees, because "[a] corporation cannot speak directly to its lawyers." Am. S.S. Owners Mut. Prot. & Indemn. Ass'n, 232 F.R.D. at 196 (quoting Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985)). The privilege is not limited to counsel's communications with only one particular representative of a corporation client, but extends to communications with a wide range of officers and employees. Weintraub, 471 U.S. at 348, 105 S. Ct. 1986, 85 L. Ed. 2d 372. Such communications remain confidential even when disclosed to multiple corporate representatives. See Strougo v. Bea Associates, 199 F.R.D. 515, 519-520 (S.D.N.Y. 2001) (citing Upjohn Co. v. United States, 449 U.S. 383, 391-92, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)); Bank Brussels Lambert, 160 F.R.D. at 442.

---

officer loses the right to see the corporation's privileged legal documents is lost, even as to litigation between the officer and the corporation regarding the termination of the officer's employment).


The New York evidence rules recognize an attorney-client privilege similar in scope to that recognized under federal common law. C.P.L.R. §4503. See Rossi v. Blue Cross & Blue Shield, 540 N.E.2d 703 (1989).

Applying federal and New York evidentiary principles to the facts alleged in the Complaint, it is clear that the attorney-client communications alleged in the Complaint, assuming they occurred, would be privileged. Plaintiff acknowledges that Paul Ellis Hash, Esq. and Rachel D. Ziolkowski, Esq. of Jackson Lewis LLP in Texas served as "defense counsel to Defendant Allied Aviation in the Discrimination/Retaliation Class Action," and that Jeffrey W. Lorell, Esq. and Seth E. Zuckerman, Esq. of Saiber LLC in New Jersey "do legal work for Defendant Allied Aviation." (Complaint ¶¶ 58, 61). Plaintiff goes on to refer to several communications directly relating to Allied's defense of the Texas litigation, including (1) alleged communications between Plaintiff and Allied's counsel, and, (2) on "information and belief", alleged communications between Allied's counsel and Allied officers and among Allied's Texas and New Jersey attorneys. (Complaint ¶¶ 58, 60-62, 64, 66-67). Any such communications, assuming they occurred, would be privileged in that they related to the rendering of legal advice to Allied in connection with the Texas litigation.

**B.     Plaintiff Has No Authority to Waive Allied's Privilege to Its Attorney-Client Communications**

Under federal common law, "the power to waive the corporate attorney-client privilege rests with the corporation's management . . . ." Weintraub, 471 U.S. at 348-49, 105 S. Ct. 1986, 85 L. Ed. 2d 372 (1985). One who is no longer an officer or director of a corporation "retains no control over the corporation's privilege." Id. at 349, fn. 5; see Am. S.S. Owners Mut. Prot. & Indemn. Ass'n, 232 F.R.D. at 198 (after termination of

association with corporation, former director is obligated to maintain the confidentiality of communications and may not "disseminate confidential information he has received as a Board member nor pierce the privilege to obtain additional information").

The New York evidence rule similarly provides, "The attorney-client privilege in the corporate context ordinarily belongs to the corporation, not to the officer or employee who spoke with counsel." Comment 4503:4 to C.P.L.R. § 4503. See Robert V. Straus Prod. v. Pollard, 734 N.Y.S.2d 170 (App. Div. 1st Dep't 2001) (management company may not obtain privileged documents between management company and counsel authored during management company's "employment" as manager of a production company, because "employer" held the privilege); see also Tekni-Plex, Inc. v. Meyner & Landis, 674 N.E.2d 663 (1996); Talvy v. American Red Cross, 618 N.Y.S.2d 25 (App. Div. 1st Dep't 1994), aff'd, 87 N.Y.2d 826 (1995).

Therefore, as a former officer of Allied, Plaintiff has no authority to waive Allied's attorney-client privilege or to disclose the alleged communications between the corporation's counsel and the corporation's employees, including herself.

C.  **The Crime-Fraud Exception to the Attorney-Client Privilege Is Inapplicable**

Under both federal and New York evidentiary law, the "crime-fraud exception" to the attorney-client privilege vitiates the confidentiality that would otherwise apply to privileged communications, if the party seeking to overcome the privilege succeeds in proving that those communications were made "in furtherance of contemplated or ongoing criminal or fraudulent conduct." U.S. v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997)(quoting In re John Doe, Inc. 13 F.3d 633, 636 (2d Cir. 1994)); see Nowlin v. People (In re Grand Jury Subpoena), 767 N.Y.S.2d 77 (App. Div. 1st Dep't 2003)

(applying federal court analysis in applying crime-fraud exception). To the extent Plaintiff relies on the crime-fraud exception in an effort to excuse her wrongful disclosure of Allied's alleged attorney-client communications, the exception is inapplicable because Plaintiff cannot show "probable cause" that a crime or fraud was committed, and that the particular communications at issue were made "in furtherance" of such a crime or fraud.

### 1. Plaintiff Cannot Carry Her Burden of Showing "Probable Cause" to Believe that a Crime or Fraud Was Committed

In seeking to invoke the crime-fraud exception, a plaintiff must first carry her burden to "demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed." Jacobs, 117 F.3d at 87. This means that the plaintiff is required to adduce facts that would give a reasonable person "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud." Id. (quoting In re John Doe, 13 F.3d at 637). A sufficient factual basis is shown by, e.g., a "tape recording of statements made" by the defendant to an FBI agent, Jacobs, 117 F.3d at 87, a criminal indictment based on tape recorded conversations, United States v. Gasparik, 141 F.Supp.2d 361 (S.D.N.Y. 2001), or, in a case of immigration documentation fraud, applications filed with the INS together with false documentation and the discovery of blank airline and consulate stationary at the defendant's office, together with other suspicious items capable of use in a fraud, United States v. Rivera, 837 F. Supp. 565 (S.D.N.Y. 1993). Cf. Ross v. UKI LTD., 2004 WL 67221 (S.D.N.Y. 2004) (the crime-fraud exception did not apply where plaintiff alleged defendants engaged in tax fraud, because plaintiff failed to provide sufficient facts to "find probable cause to believe that the defendants had crossed the line that separates tax avoidance from tax fraud.")

Here, Plaintiff herself states that she never gave false deposition testimony; thus, she did not and could not ultimately commit the crime of perjury at Mr. Rose's request, nor did she complete the perpetration of the alleged fraud. Moreover, the Court has before it no evidence of the kind and quality that supported findings of "probable cause" in the cases cited above; Plaintiff's allegation is supported neither by an indictment, nor by tape recordings, nor by documentary evidence of any kind.

In light of the fact that this case is in its earliest stage, the Court should exercise particular caution before permitting Plaintiff to wield the crime-fraud exception to defeat the attorney-client privilege. "[C]ourt findings that would deprive the client of that protection [of the attorney-client privilege] should be based upon an adequate record and bear some assurance of reliability. . . . [A]ny findings by the court that would suggest a strong enough basis to infer the perpetration of a fraud when such fraud is an essential element of the plaintiffs' underlying claims in this case would, at the very least, potentially tilt the playing field of this lawsuit at a relatively early stage in the litigation," and the Court should make such findings only with the utmost caution. In re Omnicom Group Inc. Sec. Litig., 233 F.R.D. 400, 405-06 (S.D.N.Y. 2006).

At this early juncture in the litigation, Plaintiff has failed to make the factual showing necessary to carry her burden of demonstrating probable cause that a crime or fraud has been committed, and therefore the crime-fraud exception to the attorney-client privilege is inapplicable.

{00534840.DOC}                                    9

### 2. Plaintiff Cannot Carry Her Burden of Showing that the Privileged Attorney-Client Communications Were Made "In Furtherance" of the Alleged Fraud

Further, in order to bring the communications at issue within the crime-fraud exception to the attorney-client privilege, Plaintiff must show that the communications were actually made "in furtherance" of the crime or fraud. "It does not suffice that the communications may be related to a crime. To subject the attorney-client communications to disclosure, they must actually *have been made with an intent to further an unlawful act*." Jacobs, 117 F.3d at 88 (quoting United States v. White, 887 F.2d 267, 271 (D.C. Cir. 1989) (emphasis in original)). Even if a communication itself may constitute evidence of a crime or fraud, the party seeking to pierce the privilege must show that "the communication in question was *itself* in furtherance of the crime or fraud and was intended to facilitate the criminal or fraudulent activity." Gasparik, 141 F.Supp.2d at 372 (emphasis in original). Similarly, the mere fact that communications between attorney and client had a "temporal nexus" with alleged crimes does not suffice to prove that such communications were "in furtherance" of the alleged crime or fraud, even where the client purports to be acting upon advice of counsel. In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986).

In evaluating the applicability of the crime-fraud exception, the Court must apply the foregoing principles separately to each of the communications at issue to determine whether each was in furtherance of, and actually was intended by Allied to facilitate, a crime or fraud. Focusing first on Paragraphs 58, 60 and 66, the communications alleged therein could not be deemed to have been "in furtherance" of any fraud; in allegedly telling Allied's attorneys that she did not intend to falsify her deposition testimony,

Plaintiff was not acting "in furtherance" of the alleged scheme, but rather contrary to it. Therefore, the crime-fraud exception is inapplicable to those communications.

Similarly, assuming the truth of Plaintiff's allegations "upon information and belief" that Allied's attorneys spoke among themselves and with Allied officers regarding Plaintiff's alleged refusal to engage in fraud (Complaint ¶¶ 61-62, 64 and 67), such communications would not have been "in furtherance" of a fraud. There is nothing inappropriate in an attorney reporting to his client that an employee witness intends to testify truthfully. Thus, as to those communications as well, Plaintiff has offered no evidence, let alone sufficient evidence, to show that those communications were made "in furtherance" of a crime or fraud.

* * *

Because Plaintiff has failed to carry her burden of showing both "probable cause" to believe that a crime or fraud has occurred, and that the specific communications at issue were made "in furtherance" of such a crime or fraud, the crime-fraud exception to the attorney-client privilege is inapplicable.

### D. The Appropriate Remedy for Plaintiff's Unauthorized Disclosures of Alleged Communications Is for the Court to Strike those Paragraphs From the Complaint

This Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The party seeking to strike certain matter from a pleading should demonstrate (1) that no evidence supporting the allegation would be admissible; (2) that the allegation does not bear on the issues of the case; and (3) that permitting the contested allegations to remain in the pleading would result in prejudice to the movant. Metrokane, Inc. v. Wine Enthusiast,

160 F.Supp.2d 633, 642 (S.D.N.Y. 2001). Cf. Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F.Supp.2d 367, 398-99 (S.D.N.Y. 2006) (in action by law firm to collect fees from former client, denying defendant's motion to strike attorney-client communications from complaint, because movant failed to establish privileged nature of communications and arguably waived privilege by filing separate action against law firm).

Applying the Metrokane standards here, this Court should strike the privileged attorney-client communications that Plaintiff has improperly set forth at Paragraphs 58, 60-62, 64, and 66-67 of the Complaint. Those communications are inadmissible due to their privileged nature. Moreover, the communications disclosed in those paragraphs are entirely superfluous to the issues in the case. Plaintiff alleges (Complaint ¶¶ 54, 63) that she spoke directly with Rose and other officers of Allied about the alleged request that she falsify her deposition testimony and her refusal to do so. Accepting Plaintiff's own allegations, her position was made known to Rose both by Plaintiff herself and through channels unrelated to Allied's lawyers. Therefore, Plaintiff's assertion that Allied's attorneys must have been involved in communications on the same subject is not only speculative, but also unnecessary to her claim. To allow such presumed privileged communications to remain the subject of the Complaint would prejudice Allied by undermining the confidentiality on which Allied is entitled to rely in communicating with its counsel. It appears that Plaintiff has disclosed the alleged attorney-client communications in her Complaint for the purpose of discrediting the credibility and professionalism of both Allied and its counsel, and perhaps for the additional purpose of laying a foundation to obtain through discovery still more of Allied's privileged attorney-

client communications. Plaintiff's purpose is improper, and the matter should be stricken.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the privileged communications be stricken from the Complaint.

                SAIBER LLC
                Attorneys for Defendants

                By:   *s/ Sean R. Kelly*
                      Sean R. Kelly (SK-0307)
                      One Gateway Center, 13th Floor
                      Newark, New Jersey 07102
                      (973) 622-3333
                      srk@saiber.com

Dated: August 5, 2008